SPARLING v. SMELTZER.

1. REPLEVIN—PARTNERSHIP—QUESTION FOR JURY.
In replevin for property claimed by plaintiff as surviving partner, the question of the existence of a partnership was properly submitted to the jury, where there was evidence from which they might infer a purpose to make the property common property, though it was quite as consistent with the theory that no such purpose existed.

2. SAME—GIFT—SUFFICIENCY OF EVIDENCE.
In replevin for property claimed by plaintiff as a gift from defendant's decedent, evidence of decedent's statements, made during an illness, that he desired the property, then in the joint possession of plaintiff and himself, to be placed in the hands of plaintiff for a particular purpose, unaccompanied by evidence of plaintiff's acceptance of the property, and viewed in the light of the fact that for two years thereafter, and up to the time of his death, deceased exercised the same control over the property as theretofore, was insufficient to warrant a finding of a valid gift *inter vivos*.

3. SAME.
But evidence of his subsequent statements that he had "given" the property to plaintiff, unless found to have related to the earlier transaction, was sufficient to justify such finding.

4. SAME—WITNESSES—MATTERS WITHIN KNOWLEDGE OF DECEDENT.
In replevin for live stock claimed by plaintiff as surviving partner of defendant's decedent, plaintiff's testimony that

when stock was sold, the proceeds were divided between him and decedent, and that a certain animal was a part of the common stock, was inadmissible as relating to facts equally. within the knowledge of deceased.

Error to Benzie; Chittenden, J. Submitted February 4, 1903. (Docket No. 117.) Decided June 23, 1903.

Replevin by Joseph Sparling against Abel M. Smeltzer and others. From a judgment for plaintiff, defendants bring error. Reversed.

*D. G. F. Warner* and *Pratt & Davis*, for appellants.

*Thomas Smurthwaite* (*George Whitbeck*, of counsel), for appellee.

MONTGOMERY, J. This is an action of replevin for several head of live stock. The plea was the general issue, accompanied by notice that the property in question was in his lifetime the property of one William Smeltzer, now deceased, and that the defendants now hold the same as executors of the estate of said William Smeltzer, deceased. The plaintiff was a son-in-law of William Smeltzer, and in 1896 was living on a farm in Pleasanton, Manistee county, Mr. Smeltzer residing at Joyfield, in Benzie county, some two miles distant. At this time Mr. Smeltzer was upwards of 80 years of age, and plaintiff's wife and daughter were alternately doing the household work for Mr. Smeltzer. In the fall of 1896, under some arrangement, the details of which are left in more or less obscurity by the testimony because of plaintiff's incompetency as a witness, plaintiff moved with his family onto the farm of Mr. Smeltzer, taking with him an amount of stock similar to that which Mr. Smeltzer owned, and up to the time of Mr. Smeltzer's death the two—that is, plaintiff and Smeltzer—conducted the farm, the plaintiff's wife looking after the housework, with the assistance of her daughter.

On the trial two theories were put forth by the plaintiff: The first is that the arrangement between himself and Mr

Smeltzer amounted to a partnership, and that, as the surviving partner, he had the right, independent of his claim under the alleged gift hereinafter referred to, to possess and control the personal property on the farm for the purpose of closing up the business of the copartnership. The other theory was that there was a gift of all the personal property on the farm, belonging to Mr. Smeltzer, made to plaintiff, in trust for certain purposes. The plaintiff prevailed in the court below, and the defendants bring error.

It is the contention of the defendants that there was no testimony in the case which justified submitting either of plaintiff's theories to the jury; that is to say, it is urged that there was no evidence of partnership and no evidence of a completed gift. We have examined the record with great care, and we are not prepared to say that the record is wholly devoid of evidence tending to show a partnership. It is not enough that the testimony is to our minds quite as consistent with the theory that the parties intended no community of property. There is in the case evidence from which the jury might have inferred a purpose to make the property common property, and to treat the proceeds as the fruit of a common investment, the result of the original investment and the efforts of the two parties to the transaction. It is very true that there was much testimony in conflict with this theory. Testimony that the property was given in separately, for purposes of assessment, very strongly tended to support the defendants' theory; but we are dealing with the question as to whether there was any testimony tending to sustain the plaintiff's theory, and upon this question, without going into the record at length, we think there was such testimony.

The question whether there was evidence of a completed gift is one of perhaps more doubt. There was testimony that in 1898 a Mr. Joy was called in to make some papers for Mr. Smeltzer which disposed of his real estate. Mr. Smeltzer was ill at this time. Mr. Joy testified that, when

he got through with the papers relating to the real estate, he asked Mr. Smeltzer if he wanted any papers drawn making a disposition of the personal property, but Mr. Smeltzer replied that he "had perfect confidence in Mr. Sparling, and he would put it into his hands to do with it as he would instruct him to do with it.

" *Q.* Did you hear what the instructions were that he was to do ?

"*A.* Well, I heard some instructions.   There had been some talk of building a church near there on Mrs. Sparling's land, and, referring to the personal property, Mr. Smeltzer said that Mr. Sparling should dispose of it, and put it in that church, if a church was built; if not, it was to stay in Mr. Sparling's hands; but I do not remember that Mr. Sparling said anything.   I think I have told all that I heard of the conversation in regard to the instructions given to Mr. Sparling.   I had no conversation with Mr. Smeltzer relating to the matter after that."

Another witness, a Mr. Lathwell, testified that Mr. Smeltzer said on this occasion that he wished the stock to be "used in the interest of the church—in building the church—if one was built in that neighborhood.  If one was not built in that neighborhood, he wished the stock to be used in the interest of the church nearest by, and to be left in Mr. Sparling's hands for that purpose, and to be used according to his best judgment, disposing of it for that purpose."

Plaintiff's daughter testified:

"I heard grandfather say something about personal property, that he gave it into pa's charge, and if there was a church built at Saile he was to use some of it to help the church, and, if not, he was to have the rest.   It was to be left in his hands."

Another witness[1] testified to a later conversation with Mr. Smeltzer in which he stated to her that he had disposed of the personal property,—that he had given it all to Mr. Sparling.   Were it not for this last testimony, we should hesitate to say that there was any evidence to show

[1] *I. e.,* Mrs. Albertson.

a gift *in præsenti.* There was no manual delivery of property, and while, under the circumstances of this case, this may not have been possible, and therefore not necessary, there was, according to the testimony of Mr. Joy, no acceptance of the property by word. A fair construction of this language would import an expression of a purpose which might possibly amount to a gift *causa mortis;* but, after this conversation occurred, Mr. Smeltzer recovered sufficiently to be about and again attend to his duties on the farm, and for some two years the business appears to have been conducted precisely as before, and, when anything was sold upon the farm, the money was in whole or in part paid into the hands of Mr. Smeltzer. This is seemingly wholly inconsistent with the theory that the title to this property had passed to plaintiff under a completed gift in May, 1898. Under the authority of *Davis* v. *Zimmerman,* 40 Mich. 24, it may be said that there was some evidence in the testimony of Mrs. Albertson that there had been a gift of this property. But as this was controverted, and we are not to pass upon a question of fact, this question was properly one for the jury, although we think it would have been proper to instruct the jury that, if all that the alleged admission testified to by Mrs. Albertson referred to was the transaction of 1898, this should not be deemed to have constituted a completed gift.

It will be gathered from what has already been stated that the case is a very close one on the facts, and that the rules in relation to the admission of testimony should have been very strictly adhered to. A theory was put forth, and evidently accepted by the jury, wholly at variance with many of the acts of the parties, and, before such verdict should be sustained, it should be clear that the jury were not controlled by any incompetent testimony. The plaintiff himself was a witness, and testified that, "when we had any stock fit to sell, I sold it. *Q.* What was done with the proceeds? *A.* Divided it up between us." Defendants' counsel moved to strike this statement out as relating to a fact equally within the knowledge of

the deceased, and the motion was overruled and exception taken. Again, when recalled on re-direct examination, he was asked: "*Q.* This heifer was part of this common stock?" This was objected to for the same reason, and the objection was overruled. We think each of these rulings was error. It is very clear that, upon the theory of the plaintiff, the deceased must have known what was the common stock or common property on the farm. He certainly must have known whether or not the proceeds of the sale of stock were divided between himself and plaintiff. The plaintiff, therefore, was permitted to testify to facts which, if true, were equally within the knowledge of the deceased, and this testimony went to the very gist of the case. The testimony may have been, and we are constrained to think it was, controlling of the issue.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.